## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## BANKRUPTCY DIVISION
## DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | **Bankruptcy No. 06-30009JKF** |
| Jeffrey J. Prosser | ) | |
| | ) | **Chapter 7** |
| Debtor | ) | |
| | ) | |
| | ) | |
| James P. Carroll, as Chapter 7 Trustee | ) | |
| of the Estate of Jeffrey J. Prosser, | ) | |
| | ) | |
| Plaintiff | ) | **Adv. No. 11-3001** |
| | ) | |
| v. | ) | **Related to Doc. No. 2** |
| | ) | |
| | ) | |
| | ) | |
| Dawn Prosser and | ) | |
| Bank of America, N.A., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| Jeffrey Prosser, | ) | |
| | ) | |
| Intervening Defendant | ) | |
| | ) | |

## MEMORANDUM OPINION IN SUPPORT OF INTERIM ORDER SETTING ALTERNATIVE CLOSING DATES DEPENDING UPON TERMS OF FINAL ORDER TO BE ENTERED CONFIRMING SALE[1]

---

[1] At the hearing on March 1, 2011, the Prossers contended that this Court did not have jurisdiction to conduct the Sale Hearing on the basis that the same issues were determined by an order entered in Adv. No. 10-3002 which was appealed. However, the Order Granting Summary Judgment to Trustee with Respect to His Complaint Seeking Authority to Sell Dawn Prosser's Interest in the Real Property Located at 252 El Bravo Way, Palm Beach, Florida 33480 Subject to Her Rights of First Refusal, Pursuant to §§363(H), (I), and (J) and Granting Related Relief to the Trustee was modified by the Court to permit marketing, not sale of the property. Adv. No. 10-

Before the Court is Trustee Carroll's Motion for Order (I) Approving the Sale of the Property at 252 El Bravo Way, Palm Beach, Florida, (hereinafter "Palm Beach Property") Pursuant to a Certain Contract of Sale, to the Party that Submits the Highest and Best Offer; (II) Authorizing the Chapter 7 Trustee to Take All Reasonable Steps to Complete the Sale of the Palm Beach Property, (III) Directing the Prossers to Vacate the Palm Beach Property, and (IV) Granting Related Relief (hereinafter "Sale Motion"), Adv. Doc. No. 2. Dawn Prosser, the non-debtor spouse of Jeffrey Prosser, was provided until March 8, 2011, to indicate whether she will make her election to exercise her right of first refusal. For that reason, the Court cannot enter a final order confirming the sale and will not be able to do so until March 9, 2011. Moreover, the Palm Beach County tax authority and/or the Chapter 7 Trustee have through March 4, 2011 to file a notice that the taxing authority consents to the sale, absent which, no sale confirmation order will be entered. Thus, the purpose of this Memorandum Opinion is to explain the rationale by which this Court will confirm a sale to a bidder if Dawn Prosser chooses not to exercise her right of first refusal so that the Court can set, and put the parties on notice of, necessary closing dates in that event. Time is of the essence.

Background

Trustee Carroll commenced this Adversary Proceeding by filing his Complaint Seeking Authority to Sell Dawn Prosser's Interest in the Real Property Located at 252 El Bravo Way, Palm Beach, Florida, 33480, Subject to Her Rights of First Refusal, Pursuant to 11 U.S.C. §363(h)(3), Adv. Doc. No. 1, and subsequently filed his Sale Motion. Thereafter, this Court

---

3002, Adv. Doc. No. 32. Certain items were reserved for the actual Sale Hearing as no motion to sell had been filed at that time. For the reasons stated on the record, the Court found it had jurisdiction to proceed. This is a core matter. 28 U.S.C. §157(b)(2)(N), (O).

2

permitted Jeffrey Prosser, the Debtor, to intervene as an intervening defendant with party in

interest status in this Adversary Proceeding by Order dated February 18, 2011. *See* Order

Granting Jeffery Prosser's Motion to Intervene as an Intervening Defendant with Party in Interest

Status, Adv. Doc. No. 24. Shortly thereafter, on February 25, 2011, Trustee Carroll filed an

Amended Complaint naming Bank of America, N.A. as a Defendant. *See* Amended Complaint of

Chapter 7 Trustee (i) Seeking Authority to Sell Dawn Prosser's Interest in the Real Property

Located at 252 El Bravo Way, Palm Beach, Florida, 33480, Subject to Her Rights of First

Refusal, and (ii) to Consummate Such Sale Free and Clear of Bank of America's Lien, if and

when Allowed by the Court, to Attach to the Proceeds, Pursuant to 11 U.S.C. §§363(f) and (h)(3)

(hereinafter "Amended Complaint"), Adv. Doc. No. 25. A hearing on the Sale Motion was held

on March 1, 2011 (hereinafter "Sale Hearing"). Also on March 1, 2011, prior to the Sale Hearing,

the Court heard argument on and denied the pending motions to dismiss,[2] for the reasons stated

on the record.

Findings

    Upon consideration of the record before it, including all pleadings and documents filed,

the arguments of counsel, and all evidence presented at the Sale Hearing, and for the reasons set

forth on the record, the Court finds as follows:

1.    The Chapter 7 Trustee met the requirements of §363(b)(1), which provides that "[t]he

    trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

---

[2] Jeffrey and Dawn Prosser filed jointly a Motion to Dismiss in Lieu of Answer Pursuant to 11 U.S.C. §105(A), Fed.R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b), Adv. Doc. No. 29. Dawn Prosser filed a Motion to Dismiss in Lieu of Answer Pursuant to 11 U.S.C. §105(A), Fed.R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b), Adv. Doc. No. 15.

3

of business, property of the estate[.]" The Court has examined whether "(1) there is a

sound business purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has

provided adequate and reasonable notice; and (4) the buyer has acted in good faith. *In re

Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).

Chapter 7 Trustee's Business Judgment

The Chapter 7 Trustee has exercised sound business judgment. The Chapter 7

Trustee testified that he is attempting to sell the Palm Beach Property because he believes

he has a fiduciary responsibility to do so for the benefit of the creditors and to preserve

any value in the property. He testified further that the carrying costs on the Palm Beach

Property are approximately $40,000 per month and the equity in the property is being

eroded.

The amount of the successful bid is $6,910,000. Bank of America consented to a

$500,000 carve out, reducing its distribution from $5,775,000 to $5,275,000, provided

that payment will be made at closing.[3] According to Trustee Carroll's testimony, as of

February 28, 2011, the real estate taxes owed totaled $576,000.  A broker's commission

of five percent is due if the sale is approved.[4] Five percent of the winning bid of

$6,910,000 is $345,500. Estimated closing costs approximate $70,000. Thus, with the

---

[3] At the March 1, 2011, hearing, counsel for Bank of America stated her intention to file a motion to approve a stipulation to this effect.

[4] Pursuant to the Order Authorizing Trustee's Retention [of] Robert E. List Company, Inc., as his Exclusive Brokers to Market and Sell Debtor's Property at 252 El Bravo Way, Palm Beach, Florida, Trustee's Exhibit 1, "all compensation and reimbursement of expenses to be paid to the List Company shall be subject to prior application to, and award by, this Court, pursuant to 11 U.S.C. §§ 330 and 331, the Federal and Local Bankruptcy Rules, and the Guidelines promulgated by the Office of the United States Trustee[.]" Case No. 06-30009, Doc. No. 2873.

carve out, a total of approximately $643,500 would remain after payment of the above costs and funds would be available for distribution to unsecured creditors.[5] Without the carve out, $143,500 would be available for distribution.[6]

Fair Sale Price

The Chapter 7 Trustee established that there was a thorough and extensive marketing of the Palm Beach Property. Mr. List was retained by the Chapter 7 Trustee to market, show, promote and solicit interest in the Palm Beach Property, an historic landmark property. Mr. List testified that the listing price of the property was determined pursuant to conversations with the Chapter 7 Trustee, who had an appraisal done, and the strength of the market at that time. According to Mr. List, as there had been no sales of landmark properties in 2010 as of approximately September of 2010, the decision was made to ask a good, solid price at the high end of the spectrum because, once listed, the price could not be increased. On that basis, the property was listed at $8,995,000 to permit the market to determine the fair market value of the property.

A professional draftsman and photographer were engaged to draw the floor plan of the home and take photographs for promotional purposes. An advertising and design professional was retained to create a large, color, glossy brochure, which provides an aerial picture of the property, nine pictures of the inside of the home, the floor plan, as well as a description of the property and its notable features of interest. *See* Trustee's

---

[5] Trustee's attorney's fees and broker's costs are not included in this number.

[6] To the extent it is ultimately determined that Dawn Prosser is entitled to a distribution from the proceeds, a sizeable amount will remain for distribution to unsecured creditors.

Exhibit 2. Mr. List testified that the brochure was disseminated to every prospect who toured the home and to real estate agents who inquired into the property. The entire real estate community in Palm Beach was made aware of the listing when it was placed on the Multiple Listing Service ("MLS"). *See* Trustee's Exhibit 3. Multiple advertisements of the property were also placed in St. Thomas, St. John, and St. Croix through the *V.I. Source*, an internet newspaper of general circulation in the U.S. Virgin Islands, *see* Trustee's Exhibit 6, the *Wall Street Journal* (Southeast edition), *see* Trustee's Exhibit 5, and *The Palm Beach Daily News*, *see* Trustee's Exhibit 4.

According to Mr. List, once the property was listed on the MLS, he began receiving calls to schedule showings the same day. The property was shown a total of fifty-seven times, of those showings, fifty-six were conducted personally by Mr. List.

Mr. List's marketing effort produced three Qualified Bids (as defined by the Approved Bidding Procedures[7]) and competitive bidding at the Auction held on March 1, 2011. The bid upon which the Chapter 7 Trustee commenced the Auction was $6,400,000. Ultimately, the successful bid was $6,910,000, with a second highest bid at $6,900,000.

Based upon the foregoing, we find that the proposed sale price of $6,910,000 is a fair sale price.

---

[7] On February 2, 2011, this Court entered an Order approving bidding procedures in the form attached to that Order. Case No. 06-30009, Doc. No. 3138. Those bidding procedures shall be referred to hereinafter as Approved Bidding Procedures. The Approved Bidding Procedures were amended to extend certain deadlines as set forth in this Court's Order dated February 15, 2011 but otherwise remained the same in substance. *See* Case No. 06-30009, Adv. Doc. No. 3160.

Adequate and Reasonable Notice

Adequate and reasonable notice was provided. As stated above, the Palm Beach

Property was listed on the MLS and advertised in the *V.I. Source, Wall Street Journal,*

and *The Palm Beach Daily News*. The Approved Bidding Procedures provide:

> The Trustee will also cause a notice of the Bidding Procedures, the
> Auction (if necessary, as detailed below) and the Sale Hearing to
> be published in *The News* [sic]*, The St. Thomas Source,* and *The
> Wall Street Journal* (Southeast edition) and *The Palm Beach Daily
> News* substantially in the form of the Notice of Bidding
> Procedures, Auction Date and Sale Hearing that will be attached to
> the Sale Motion, when filed.

*See* Trustee's Exhibit 7, Bidding Procedures, at 1. We note that while the entirety

of the Approved Bidding Procedures was published in the *St. Croix Source, St. John

Source*, and *St. Thomas Source*, the other advertisements advised interested parties of the

date and time of the auction and further directed those who were interested to contact Mr.

List for further details and bid procedures. *See* Trustee's Exhibits 4,[8] 5, 6. Despite the fact

that the advertisements are not in literal compliance with the Approved Bidding

Procedures, which the Chapter 7 Trustee proposed for the Court's acceptance, the notice

in the advertisements is sufficient for purposes of due process and to provide adequate

and reasonable notice to the public. The cost of publishing the Approved Bidding

Procedures in their entirety in each publication is not justified. The fact that the

advertisements provided that the Auction was scheduled to be held on March 1, 2011, and

---

[8] Advertisements in *The Palm Beach Daily News* commenced on January 14, 2011, and
continued through February 23, 2011. Beginning with the advertisement on February 6, 2011, the
notice of the March 1, 2011, auction date was included along with an instruction to contact
Martin List regarding bid procedures. Given that bidding procedures were not approved until
February 2, 2011, the initial advertisements which did not contain those details were appropriate.

did not identify March 1, 2011, as the sale *and* auction date does not render notice

insufficient. The Sale Hearing commenced upon conclusion of the Auction.

We find that there was adequate and reasonable notice of the sale of the property,

which generated a total of fifty-seven showings and many more contacts to Mr. List that

did not result in showings. Furthermore, there was adequate and reasonable notice of the

Auction, at which competitive bidding took place.

Good Faith Purchaser

PB Purchase LLC, the successful bidder at the auction held March 1, 2011, has

acted in good faith. The Chapter 7 Trustee testified that he first met Mr. Fisher, the

principal, the day of the auction and his only prior contact had been through counsel. To

his knowledge, all of the dealings with the successful bidder were in good faith and at

arm's length. PB Purchase LLC was brought to the sale by a realtor so that the

commission was five percent due to the "co-brokerage" where Mr. List listed the property

but another realtor represented the buyer.[9] Mr. List was unaware of any relationship

between PB Purchase LLC and the parties in interest in the case. Thus, in accord with *In*

*re Abbotts Dairies,* 788 F.2d 143, 149-50 (3d Cir. 1986), we find that PB Purchase LLC

qualifies as a good faith purchaser for the purposes of §363(m).[10]

Other Issues

---

[9] Without a co-broker, the sales commission would have been four percent.

[10] Section 363(m) provides, "[t]he reversal or modification on appeal of an authorization
under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity
of a sale or lease under such authorization to an entity that purchased or leased such property in
good faith, whether or not such entity knew of the pendency of the appeal, unless such
authorization and such sale or lease were stayed pending appeal."

8

*Distribution of Proceeds to Creditors who are Solely Creditors of the Debtor*

Jeffrey and Dawn Prosser assert that the proceeds of sale cannot be used to satisfy debts which are not joint debts and thus "sale of the Palm Beach property will result in no benefit to the estate and its unsecured creditors...." *See* Jeffrey J. Prosser's Response and Opposition to the Sale Motion, Adv. Doc. No. 16, at ¶73; Dawn Prosser's Adoption and Joinder in Jeffrey J. Prosser's Response and Opposition, Adv. Doc. No. 17. Pursuant to Florida law, a creditor of only one spouse may not reach tenancy by the entirety property to satisfy its claim, though joint creditors may. *See In re Planas*, 199 B.R. 211, 214 (Bankr. S.D. Fla. 1996)*.*

We note that courts diverge as to whether Florida law permits tenancy by the entirety property to be liquidated solely for the benefit of joint creditors or of all creditors. We find Judge Cristol's reasoning in *In re Planas* to be persuasive. In *Planas*, the debtor claimed various property as owned as tenants by the entirety and therefore exempt. *Id.* at 212. The trustee objected to the exemptions claimed by the debtor and contended that he was "entitled to liquidate *all* entireties property if the Debtor and his non-debtor spouse [were] jointly liable on *any* joint obligation...whether reduced to judgment or not, and whether secured or unsecured." *Id.* at 213 (emphasis in original). After a thorough analysis of case law, ultimately, the court agreed with the rationale in *In re Amici*, 99 B.R. 100, 101-102 (Bankr. M.D. Fla. 1989):

> [I]f a trustee is permitted to liquidate properties in question as
> contemplated by §363(h), there would be a sub-class of creditors
> since joint creditors of the Debtor and the non-debtor spouse would
> be the only ones entitled to the proceeds of the sale of these
> properties. *Id.* This solution is totally contrary and in violation of

9

the scheme of distribution provided by §726 of the Bankruptcy
Code. The remaining unsecured creditors, who do not have a claim
against both the Debtor and the non-debtor spouse, would not
receive equal treatment to that of the joint creditors although
legally holding claims of equal rank.

*In re Planas,* 199 B.R. at 217.

Here, the Palm Beach Property is titled in the names of Jeffrey Prosser and his

non-debtor spouse, Dawn Prosser, as tenants by the entirety. The Palm Beach Property is

subject to a mortgage held by Bank of America and to real estate taxes, and the amount

owed on the mortgage and taxes are joint obligations of the Prossers and are liens against

the Palm Beach Property. Therefore, we find that the sale of the property is appropriate

pursuant to Florida law and will generate a recovery to unsecured creditors.[11]

---

[11] The Chapter 7 Trustee contends that usually a trustee desires to pay creditors other than
secured creditors from the sales, but that is not a statutory mandate. He further argued that a
trustee should do all he can to maximize distributions to creditors. The equity in the property has
eroded. He stated that even though here the sale will generate a recovery to unsecured creditors,
there would still be a laudable purpose behind the sale without such recovery because it would
result in a reduction of debt and preservation of eroding equity. The Trustee's position is
supported by case law. It is a trustee's "duty to maximize the value of the estate...." *Commodity
Futures Trading Com v. Weintraub*, 471 U.S. 343, 352 (U.S. 1985). Citing to *Weintraub*, the
Court of Appeals for the Third Circuit stated:

> [A] a trustee has a fiduciary relationship with *all creditors of the estate*. *See
> Weintraub*, 471 U.S. at 354-55. Indeed, under the Code a trustee must investigate
> all sources of income for the estate and "collect and reduce to money the property
> of the estate." 11 U.S.C. §704(1). She has the duty to maximize the value of the
> estate, *Weintraub*, 471 U.S. at 353, and in so doing is "bound to be vigilant and
> attentive in advancing [the estate's] interests." *In re Baird*, 112 F. 960, 960 (D.C.
> Cir. 1902). In sum, "it is the trustee's duty to both the debtor and the creditor to
> realize from the estate all that is possible for distribution among the creditors." 4
> Collier on Bankruptcy P 704.01 (15th ed. 1993). Thus, this trustee was faced with
> a conflict between her fiduciary duty to the creditor body as a whole and the
> alleged duty to go forward with a settlement agreement favoring one creditor but
> otherwise detrimental to the estate.

*In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996)(emphasis added). The court would "not constrain a
bankruptcy trustee from fulfilling her statutory duty to the estate and the creditor body as a

*Taxing Authority's Consent to Sale*

In their Motion to Dismiss in Lieu of Answer Pursuant to 11 U.S.C. §105(A),

Fed.R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b) (hereinafter "Joint Motion to Dismiss"),

Jeffrey and Dawn Prosser assert as a basis for dismissal that the Chapter 7 Trustee has

failed to name the real estate taxing authority as a defendant. *See* Adv. Doc. No. 29, at

¶10.[12] The Court notes that the initial Complaint in this Adversary Proceeding solely

named Dawn Prosser as a defendant. Since the commencement of this Adversary

Proceeding, the Court has permitted Jeffrey Prosser to participate as an intervening

defendant with party in interest status. Also, at the hearing held February 18, 2011, the

Court ordered the Chapter 7 Trustee to amend his complaint and add any necessary

---

whole...." *Id. See also id.* at 395 ("What the trustee did here was to fulfill her obligations to all creditors, as required by, inter alia, 11 U.S.C. § 704(1).")

We note that to the extent the secured tax claims continue to accrue at the rate of approximately $100,000 per year and the secured Bank of America mortgage continues to accrue unpaid principal and interest at the rate of $324,000 per year, the existing equity in this property will no longer exist in short order. At that point, some of the secured claims will no longer be secured and, instead, will join the unsecured creditor pool. Minimizing the unsecured creditor pool helps to maximize distributions to the existing pool and is clearly within the Trustee's mandate.

[12] Also in the Joint Motion to Dismiss, the Prossers contend that the Greenlight Entities and Rural Telephone Finance Cooperative ("RTFC") are necessary parties who have not been named as defendants in this Adversary Proceeding. *See* Adv. Doc. No. 29, at ¶10. The Joint Motion to Dismiss alleges that the Greenlight Entities are necessary parties on the basis of a judgment against Jeffrey Prosser and his companies and that the RTFC is a necessary party on the basis of a judgment against Jeffrey Prosser. The arguments as to these entities were not developed on the record at the March 1, 2011, hearing. However, the argument is without merit. First, there is no explanation as to how the judgments against Jeffrey Prosser and/or his companies, but not Dawn Prosser, can result in a lien on property held as tenants by the entirety. Second, according to the list of registered telephonic participants for the March 1, 2011, hearing, counsel for both the Greenlight Entities and the RTFC were listed. Counsel for neither entity asserted an interest in the property or contended that they had been improperly excluded from the Adversary Proceeding. The Prossers do not have standing to represent either entity's interest.

parties. On February 22, 2011, the Chapter 7 Trustee filed his Amended Complaint

adding Bank of America, N.A. as a defendant, but did not include the taxing authority,

which, as a statutory lien creditor, will be paid in full at closing.

At the March 1, 2011, hearing, the Court heard argument on the Joint Motion to

Dismiss. The Prossers asserted that there were several bases upon which the taxing body

may object to the sale. However, as stated on the record, only the taxing body has the

right to object to or argue its position on the sale. At the hearing, the Court provided until

March 4, 2011, for the taxing authority and/or the Chapter 7 Trustee to cause a notice to

be filed stating that the taxing authority has consented to the sale, or otherwise waives

lack of notice. If that does not occur, then the Chapter 7 Trustee must file an Amended

Complaint including the taxing authority as a party and a new sale hearing will be

scheduled.[13]

*Notice of Dawn Prosser's Intention to Exercise her Right of First Refusal*

Dawn Prosser asserts that the Approved Bidding Procedures, Trustee's Exhibit 7,

wrongfully impair her right of first refusal pursuant to §363(i), which provides:

> Before the consummation of a sale of property to which subsection
> (g) or (h) of this section applies, or of property of the estate that
> was community property of the debtor and the debtor's spouse
> immediately before the commencement of the case, the debtor's
> spouse, or a co-owner of such property, as the case may be, may
> purchase such property at the price at which such sale is to be
> consummated.

Page four of the Approved Bidding Procedures outlines the process by which

---

[13] In addition, the Court required counsel for the Chapter 7 Trustee to provide the taxing body with a recording of the March 1, 2011, hearing so that it is has the necessary information to make an informed decision as to whether it wishes to consent to the sale.

Dawn Prosser may reserve and ultimately exercise her right of first refusal, although certain deadlines were amended by the Order Amending Approved Bidding Procedures, Trustee's Exhibit 8, *see supra* note 5. Initially, Dawn Prosser was to be provided with the number of Participating Qualified Bids (as defined by the Approved Bidding Procedures) received and the amount of the bids along with a copy of the contract that the Trustee believed constituted the highest and best offer which would commence the Auction. Dawn Prosser was then provided until February 27, 2011, to reserve her right of first refusal by providing the Required Bid Documents (as defined by the Approved Bidding Procedures) to Trustee's counsel. Failure to do so was to be deemed a waiver. However, due to the fact that there was a timely reduction of the bid which the Trustee intended to rely upon and alleged confusion as to the bid that would commence the auction as a result, the Court is not deeming her failure to act as a waiver of Dawn Prosser's right of first refusal. Rather, the Court looks to the terms of the Approved Bidding Procedures requiring that, as Dawn Prosser's counsel was reminded on the record when bidding ended at the Auction, Dawn Prosser shall reserve her right of first refusal by providing a written statement of her intention to exercise her right of first refusal and provide all Required Bid Documents and a Good Faith Deposit to the Trustee's counsel on or before March 8, 2011, at 5:00 P.M. Prevailing Eastern Time. Failure to do so will be considered a waiver of her right of first refusal. The price Dawn Prosser must take into consideration is the $6,910,000 high bid, as her counsel was advised when the Auction concluded.[14]

---

[14] As a tenant by the entireties owner, Mrs. Prosser would have to pay half of that amount to exercise her right of first refusal.

Dawn Prosser takes issue with the process set forth requiring her to reserve her right of first refusal. She contends that she has a right of first refusal until the time of consummation of the sale. The Approved Bidding Procedures do not wrongfully impair Mrs. Prosser's rights. They simply place a reasonable condition upon the exercise of her right of first refusal. The condition is warranted so that the parties know prior to closing whether the sale will go forward to a co-owner or to the successful bidder. There are costs, attorney's fees, scheduling issues, etc. required to be completed in preparation for a sale. There is no need to have anyone other than the purchaser accrue these costs. Nothing in §363(i) prohibits reasonable conditions and the condition will be enforced. If Dawn Prosser complies with the Approved Bidding Procedures and reserves her right of first refusal, she will be permitted to close on the Palm Beach Property on or before the date set forth in the Interim Order accompanying this Memorandum Opinion.

*Fixtures*

The Chapter 7 Trustee included as an addendum to the As Is Contract for Sale and Purchase, Schedule 1 which identifies certain items as "fixtures which Seller shall seek Court Approval to have included with the sale." *See* Case No. 06-30009, Doc. No. 3138. At the March 1, 2011, hearing, the Prossers contested that the items on Schedule 1 are, in fact, fixtures.

The Court finds from the testimony at trial that all items listed on Schedule 1,

14

except the washer and dryer,[15] window treatments, and A/V equipment[16] (i.e, component units not wired into the home which can be unplugged), are fixtures. With the exception of these two items, the property identified on Schedule 1 is or can be affixed to the home in such a way as to constitute a fixture or an integral and necessary part of a fixture. The hurricane panels are in the latter category. While they can be removed from the home, they are designed to fit onto bolts that are attached to the exterior of the home and specifically fit this particular home.

Similar facts were presented in *In re Snyder*, a bankruptcy case filed in the Bankruptcy Court for the Western District of Pennsylvania. In that case, among other issues raised, the debtor contended that a railing was not a fixture. The court found that "[t]he posts holding the railings are fixtures that are affixed to the building. The railings that attach are movable but nonetheless part of the fixture." Case No. 04-31470, Doc. No.

---

[15] We note that there was no evidence presented at trial substantiating that the washer and dryer are fixtures. Mr. List distinguished the washer and dryer from the other identified appliances which were built in behind matched cabinetry.

[16] We note that Jeffrey Prosser characterized the A/V equipment as property owned as tenants by the entirety in his Amended Schedule B and claimed the property as exempt in Schedule C. *See* Case No. 06-30009, Doc. No. 1226. However, Jeffrey Prosser and Dawn Prosser have consistently asserted in other proceedings that Jeffrey Prosser gifted his property to Dawn Prosser and she is the sole owner.
Furthermore, we note the following discussion by the court in *In re Planas* addressing entitlement to exemptions where there were joint creditors:

> In support of his claimed exemption for household goods and art objects, Debtor relies upon the case of *In re Avins*, 19 Bankr. 736 (Bankr. S.D.Fla. 1982), which stands for the proposition that Florida recognizes the estates by the entireties and exempts such property from the claims of creditors of an individual spouse. *Avins*, 19 Bankr. at 737. This Court finds Debtor's reliance upon Avins inapplicable since there are joint creditors in the case at bar. Therefore, the Debtor is not entitled to the exemption on this basis.

199 B.R. 211, 218 (Bankr. S.D. Fla. 1996).

241. The decision was affirmed on appeal by the District Court for the Western District of

Pennsylvania and the Court of Appeals for the Third Circuit. *See In re Snyder*, 328

Fed.Appx. 833 (3d Cir. 2009).

However, despite the determination that these items are personalty and not

fixtures, the Chapter 7 estate has an interest in the A/V equipment, window treatments,

and washer and dryer. Therefore, a separate agreement for purchase can be negotiated

with the buyers if they wish to purchase these items. Otherwise, the purchasers are

entitled to abatement of the purchase price as provided in the Bankruptcy Addendum to

"As Is" Contract for Sale and Purchase. *See* Case No. 06-30009, Doc. No. 3138, at ¶7.

As to all other items, the testimony of Mr. List and Mr. Carroll established that the

other items on Schedule 1 were all attached to the realty and were not "plug in" features.

The chandeliers, sconces, and other electrical components were all attached to their

supporting braces and "hard wired" into the home. The intercom system is wired

throughout the house. The built-in TV screen in the media room is built into the home.

The projector is located in a closet so that it is not visible in the room. The projection

shines through an approximately six inch hole onto a recessed screen which descends

from an installed soffit. The wet bar is a permanent part of the home, as is the elevator

equipment which is built into its own elevator shaft. The diesel power generator is wired

into the home's power system so that it takes over the power to the home in the event that

the utility service is disrupted. The wine refrigerator and appliances are enclosed in built-

in cabinetry and the wine room is just that, a walled-in room. The pool heater and

equipment are hard wired to the power supply and connected to the water supply.

*Evidentiary Hearing*

Both counsel for Jeffrey Prosser and Dawn Prosser objected to an evidentiary hearing taking place at the March 1, 2011, Sale Hearing on the basis that the hearing had not been noticed as an evidentiary hearing. The Case Management Order in Jeffrey Prosser's bankruptcy case provides that no witnesses will be heard on omnibus hearing dates unless the Court specifically orders otherwise. March 1, 2011, the date of the sale hearing, was an omnibus hearing date. However, the court specially set the sale hearing to take place on this date by virtue of the Approved Bidding Procedures and the Notice and Order Setting Hearing on an Expedited Basis, Adv. Doc. No. 7. Contested sale hearings require evidence to be presented. The issues remaining for the Court to determine, specifically as provided in this Court's May 14, 2010, Order in Adv. No. 10-3002, Adv. Doc. No. 32, made it clear that presentation of evidence would be required. In the May 14, 2010, Order, the Court stated that "whether the element of §363(h)(3) is met for an actual sale will be determined at the hearing regarding the sale." Section 363(h)(3) requires a determination of whether the benefit to the estate outweighs the detriment, if any, to co-owners. Such a determination cannot be made without evidence, and all parties were aware that the Court would be considering that issue at minimum at the sale hearing. For that reason and the reasons stated on the record, the Sale Hearing was held, as scheduled, on March 1, 2011.

2.    The Trustee has met the requirements set forth in §363(f) to sell the Palm Beach Property free and clear of liens. Section 363(f) provides,

The trustee may sell property under subsection (b) or (c) of this section

17

free and clear of any interest in such property of an entity other than the estate, only if–

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The amount of the successful bid is $6,910,000. Bank of America consented to a $500,000 carve out, reducing its distribution from $5,775,000 to $5,275,000, provided that the bank is paid at closing. According to Trustee Carroll's testimony, as of February 28, 2011, the real estate taxes owed totaled $576,000. Thus, the mortgage and taxes associated with the property total $5,851,000. The property is to be sold at an amount greater than the aggregate value of all liens on the property. Only one of the five conditions set forth under §363(f) must be met by the Trustee, and that condition has been met here.[17]

3.    The Trustee met his burden pursuant to §363(h). Section 363(h) provides,

[n]otwithstanding subsection (f) of this section, the trustee may sell both the

---

[17] In the Sale Motion, the Chapter 7 Trustee also addressed the interest that the Chapter 11 Trustee of the bankruptcy estate of Innovative Communication Corporation ("New ICC") has in the Palm Beach Property. *See* Adv. Doc. No. 2, at ¶68. Pursuant to this Court's Memorandum Opinion, Report and Recommendation to the District Court and Certification Pursuant to District Court Order (hereinafter "Report and Recommendation"), the transfer of the Palm Beach Property from New ICC to the Prossers was avoidable as a fraudulent conveyance. Adv. No. 08-3002, Adv. Doc. No. 212. The District Court has not yet ruled on the Report and Recommendation. Thus, there is no final order resolving the issue and as the record now stands, the interest in the property is that of the Chapter 7 estate. Moreover, counsel for the Chapter 11 Trustee represented at the March 1, 2011, hearing that the Chapter 11 Trustee consented to sale and the proposed carve out of Bank of America's distribution, which is contingent upon payment at closing.

estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

In the May 14, 2010, Order Granting Summary Judgment To Trustee With Respect to His Complaint Seeking Authority to Sell Dawn Prosser's Interest in Real Property Located at 252 El Bravo Way, Palm Beach, Florida, 33480 Subject to Her Rights of First Refusal, Pursuant to 11 U.S.C. §§363(H), (I) and (J) and Granting Related Relief to the Trustee, this Court found that (1) partition in kind of the Palm Beach Property between the Debtor's estate and Defendant Dawn Prosser is impracticable, (2) sale of the estate's undivided interest in the Palm Beach Property would realize significantly less for the estate than a sale of such property free of the alleged interests of the Defendant Dawn Prosser, and (3) the Palm Beach Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. Case No. 10-3001, Adv. Doc. No. 32, at ¶¶L, M, O.

The Court did not determine in the May 14, 2010 Order whether the benefit to the estate of a sale of the Palm Beach Property free of the alleged interests of Defendant

Dawn Prosser outweighed any detriment to her. The Court reserved that determination for the hearing regarding the sale itself, which was held March 1, 2011.

As stated above, based upon the evidence, we now find that benefit to the estate outweighs the alleged interests of Dawn Prosser. First, sale of the property will produce a recovery for the benefit of unsecured creditors.

Second, the Palm Beach Property is a second home to Mrs. Prosser. There are no young children living in the residence such that the sale would force the children out of a school system or sever ties to the community. Mrs. Prosser's primary residence and domicile is in the U.S. Virgin Islands, where she has title to a property referred to as "Estate Shoys."[18]

Third, the Prossers have not been making the mortgage, tax, and insurance payments on the Palm Beach Property which total approximately $40,000 per month. The equity in the property is being eroded as the Prossers reside in the property without paying these costs. The burden of the insurance payments alone led the Chapter 7 Trustee to request that Mrs. Prosser be required to reimburse the estate for the funds expended on insurance and to require Mrs. Prosser to pay the costs of insurance thereafter. That request was denied. Trustee Carroll recognizes his responsibility to preserve the property, and he has voiced valid concerns with respect to the property's upkeep. He testified that he has not had access to the Palm Beach Property since January of 2008, the Prossers have had no income since then and the loans have fallen behind. On that basis he questioned the

---

[18] Although in the Turnover Opinion, we found that Jeffrey Prosser also has an interest in the Estate Shoys home, that home is also Dawn Prosser's and is titled in her name.

20

Prossers' ability to maintain the home. His concerns have been borne out by the inspection reports.

Fourth, although the Prossers assert that the moving costs should be considered as a detriment to Mrs. Prosser in this analysis, there are always costs associated with moving, and that cost does not outweigh the benefit to the estate. Moreover, this is not Mrs. Prosser's primary residence. Furthermore, the Chapter 7 estate shares an interest in the furnishings which will be removed from the home upon sale. Trustee Carroll testified that pursuant to an understanding with Christie's, a company which conducts auctions, Christie's has agreed to move and store the property free of charge until there is a determination of whether it can be sold.[19] Trustee Carroll testified further that he hopes to come to an agreement with Dawn Prosser about moving the furnishings.

Lastly, we address Jeffrey Prosser's counsel's assertion that, due to litigation pending in state court involving Bank of America, the mortgagee, and Mrs. Prosser, the promissory note upon which the mortgage is based may be extinguished and no debt will exist to support the mortgage. The Court does not agree with counsel's characterization of the state court action. Counsel for Mr. Prosser handed up a copy of Bank of America's complaint and Mrs. Prosser's answer to Bank of America's complaint to provide the Court with an opportunity to review the documents.[20] The state court litigation involves Mrs. Prosser's in personam liability; it is not an *in rem* action with respect to the lien of

---

[19] At this time, the Chapter 7 Trustee has not filed a motion to sell the property.

[20] The pleading was not retained by the Court and was not entered into evidence. The document was simply presented to advise the Court of the nature of the state court proceeding.

21

the mortgage against the property.  Debtor's counsel's argument relies upon an affirmative defense in Mrs. Prosser's answer. The answer contends that Mrs. Prosser is not liable on the promissory note *if* it is ultimately determined that the transfer of the Palm Beach Property was a fraudulent conveyance to her. *See* note 17, *supra,* discussing the fraudulent conveyance issue. First, if the property was acquired by the Prossers as a fraudulent transfer, then Mrs. Prosser has no tenant by the entireties interest in it to protect. Second, the affirmative defense is contingent upon a finding that the transfer was, in fact, a fraudulent conveyance. Third, Mrs. Prosser did not assert a counterclaim. She simply asserted a defense to her in personam liability. This Court is proceeding based upon the facts as they stand now, i.e., that the Palm Beach home is titled as tenants by the entireties property and is encumbered by a mortgage which secures a joint obligation of both husband and wife. To the extent that the sale of the Palm Beach Property will result in full satisfaction of Bank of America's claim, that will be to Mrs. Prosser's benefit by reducing accruing obligations against her and against the Palm Beach Property *in rem* and is a factor we consider in favor of approving the sale.

Conclusion

For the foregoing reasons, the Court will confirm a sale to a bidder if Dawn Prosser chooses not to exercise her right of first refusal. Thus, appropriate deadlines for closing will be set.

DATE:  March 4, 2011

*Judith K. Fitzgerald*

kdv

Judith K. Fitzgerald
United States Bankruptcy Judge

22

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Bankruptcy No. 06-30009JKF** |
| **Jeffrey J. Prosser** | ) | |
| | ) | **Chapter 7** |
| Debtor | ) | |
| | ) | |
| **James P. Carroll, as Chapter 7 Trustee** | ) | |
| **of the Estate of Jeffrey J. Prosser,** | ) | |
| | ) | |
| Plaintiff | ) | **Adv. No. 11-3001** |
| | ) | |
| v. | ) | **Related to Doc. No. 2** |
| | ) | |
| | ) | |
| | ) | |
| **Dawn Prosser and** | ) | |
| **Bank of America, N.A.,** | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| **Jeffrey Prosser,** | ) | |
| | ) | |
| Intervening Defendant | ) | |

**INTERIM ORDER SETTING ALTERNATIVE CLOSING DATES DEPENDING
UPON  TERMS OF FINAL ORDER TO BE ENTERED CONFIRMING SALE**

**AND NOW**, this 4th day of March, 2011, **IT IS HEREBY ORDERED:**

1.      If a statement indicating that the taxing body is not opposed to the sale is not filed

on behalf of or by the local taxing body by March 4, 2011, then the Chapter 7

Trustee must file a second amended complaint naming the taxing body as a

1

defendant, following which the Court will vacate this Interim Order and schedule additional proceedings.

2.     If Dawn Prosser wishes to reserve her right of first refusal, she must express her intent to do so by providing a written statement to the Chapter 7 Trustee's counsel no later than **5:00 P.M. Prevailing Eastern Time** on **March 8, 2011,** along with all required Bid Documents, including the Good Faith Deposit, consistent with the Approved Bidding Procedures.

3.     The Chapter 7 Trustee shall file a Certification of Counsel on **March 9, 2011,** to apprise the Court of whether Dawn Prosser has reserved her right of first refusal in accordance with the procedures set forth above so that the Court may enter a final order confirming the sale either to Dawn Prosser or to the successful bidder.

4.     If Dawn Prosser reserves her right of first refusal and the sale to her is confirmed, closing must occur on or before **April 4, 2011**, at **5:00 P.M. Prevailing Eastern Time.**  If closing does not occur by the deadline set forth herein, the successful bidder, PB Purchase, LLC, must close on the sale at the amount of its winning bid, $6,910,0000, on or before **April 30, 2011**, at **5:00 P.M. Prevailing Eastern Time.**[21] If closing does not occur by the deadline for the successful bidder, then the second highest bidder, Richard G. Robb, must close on the sale at the amount of his highest bid, $6,900,000, on or before **May 30, 2011,** at **5:00 P.M.**

---

[21] Pursuant to the terms of the Bankruptcy Addendum to "As Is" Contract for Sale and Purchase, closing must occur within thirty days after the Approval Deadline of April 1, 2011, or the contract may be terminated by Buyer with written notice and the Deposit shall be returned. Case No. 06-30009, Doc. No. 3138.

2

**Prevailing Eastern Time**. Time is of the essence.

It is **FURTHER ORDERED** that Counsel for the Chapter 7 Trustee shall immediately

serve a copy of this Interim Order and Memorandum Opinion on all parties in interest who do not

receive electronic notice and shall file a certificate of service forthwith.

*Judith K. Fitzgerald*      kdv

**Judith K. Fitzgerald**
**United States Bankruptcy Judge**

3